This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, which terminated appellant's parental rights. Because the judgment of the trial court was not against the manifest weight of the evidence, we affirm.
Appellant is the natural mother of Betty S., born March 23, 1997. Three days after Betty's birth, appellee, Lucas County Children Services ("LCCS") took temporary emergency custody of her and filed a complaint for permanent custody. Betty was removed from appellant's care due to appellant's history of being unable to adequately care for previous children. In 1974, appellant's abusive husband killed their two year-old son, one of four children born of that marriage. The husband was convicted and sent to prison. LCCS ultimately took permanent custody of the three remaining children, as well as an additional child that appellant had from a previous relationship.
In the current custody action, appellant's male companion ("purported father") with whom she had lived for three years was initially presumed to be Betty's father and was made a party to Betty's custody proceedings. However, genetic tests excluded him as the biological father. Although granted a request for a second paternity test, father failed to have the test performed due to its $170 cost. The purported father was retained as an interested party in the custody proceedings but is not a party to this appeal.
On June 6, 1997, the trial court conducted a hearing on the complaint. By agreement between the parties, the court entered a finding of dependency and converted the permanent custody action to one for temporary custody. Thereafter, LCCS established a case plan which provided services and referrals to appellant and the purported father. On December 29, 1997, LCCS moved for permanent custody.
At the permanent custody disposition hearing, held on May 28, 1998, the following evidence was presented. Dr. Charlene Cassel, an expert in clinical psychology, testified that she had evaluated both appellant and her husband. The tests indicated that appellant was not suffering from any depression or serious mental illness. Appellant's seventy-three IQ indicated mild mental retardation. The psychologist, however, acknowledged that IQ is not determinative of one's ability to parent. Nonetheless, Dr. Cassel noted that appellant's ability to process and utilize information was somewhat limited; appellant would be able to perform parenting tasks which she was taught to remember by rote. The psychologist stated that appellant would have difficulty with abstract thinking and in applying any skills learned to unfamiliar circumstances, such as changing the baby's diaper at a shopping mall rather than at home. Additionally, although appellant might be able to perform certain parenting tasks, she would need constant reminders and supervision to accomplish them. Dr. Cassel opined that appellant would also have problems dealing appropriately with emergency or crisis situations.
Dr. Cassel also evaluated the purported father. Although the purported father acknowledged that appellant might have difficulty taking care of Betty by herself, he saw no problem with leaving the baby with appellant all day while he was at work. Dr. Cassel also had health concerns about the father's ability to care for Betty due to his serious heart condition.
A social worker from a local mental health care agency, Connie Demtroff, also testified as to the couple's participation in the parenting program. She said both parents attended sixteen out of seventeen three-hour classes. Demtroff described appellant as being able to learn certain child care skills, but unable to apply them without prompting from staff members. At the end of the program, appellant was to attempt to take care of Betty by herself; this was to occur while staff members observed from another part of the room. According to Demtroff, appellant would often look to staff for help, especially if Betty began to cry or fuss. Appellant was unable to independently identify possible reasons or remedies for the baby's crying, such as needing to change a diaper or distracting the baby with a toy. Demtroff also stated that although appellant completed the parenting classes, appellant had not demonstrated that she could safely care for Betty on her own. Demtroff noted that while appellant would not do anything to intentionally harm the baby, she had a concern that appellant might forget to feed Betty or leave her unattended in a bathtub while she talked with a neighbor.
Another witness, Kristen Jeska, the LCCS social worker, also opined that appellant is unable to appreciate common problems and dangers associated with having a young child in the house. She stated that appellant could not comprehend the danger that her large dogs might present to a toddler. Jeska described appellant as very domineering and often unwilling to consider any ideas other than her own. Additionally, appellant resisted the suggestion of day care for Betty while the baby's purported father was at work, insisting that she could take care of the baby by herself. Jeska also noted that, according to her information, appellant had missed many visitations with the baby. When Betty was placed temporarily with a relative, appellant refused to extend her visitation time even though encouraged by the relative to do so. Appellant allegedly did not get along with the relative and eventually asked for visits to occur at the agency.
Jeska then testified that Betty had since been removed from the relative's home and placed with foster parents in a "legal risk" foster home. These foster parents wish to adopt Betty should appellee receive permanent custody. In Jeska's opinion, Betty should not be placed with appellant or the purported father.
The report filed by Betty's guardian ad litem ("GAL") recommended that LCCS be given permanent custody. The GAL noted that appellant utilizes very concrete thought processes and learns information through rote memory. However, appellant is unable to apply the information to a situation which was different from examples given in the parenting class. The GAL acknowledged that both parents love Betty, but that neither was capable of providing the kind of secure placement Betty needs. Neither parent offered any evidence in rebuttal.
On July 13, 1998, the trial court granted permanent custody of Betty to LCCS. Appellant mother now appeals that judgment, setting forth the following sole assignment of error:
 "THE JUDGMENT OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF BETTY S. TO THE LUCAS COUNTY CHILDREN SERVICES BOARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that she substantially complied with the services offered in the case plan, and she contests the accuracy of the testimony concerning her history as a parent. Consequently, appellant contends that appellee failed to prove the factors contained in R.C. 2151.414(E)(1) and (2) by clear and convincing evidence.
R.C. 2151.413(A) permits a public children services agency to move for permanent custody of a child previously adjudicated abused, neglected, and/or dependent and who is in the agency's temporary custody. Permanent custody may be awarded if 1) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents, and 2) that a grant of permanent custody of a child to a children's service agency is in the child's best interest. R.C.2151.414(B).
R.C. 2151.414(E) provides, in pertinent part, for the following factors to be considered in determining whether or not the child cannot or should not be placed with the parents within a reasonable time:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
If one or more of the twelve enumerated factors has been proven by clear and convincing evidence, the court may terminate the rights of a natural parent and award permanent custody of a child to a children services agency. See In re William S. (1996),75 Ohio St.3d 95. "Clear and convincing" evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. In determining the best interest of the children, a trial court is directed to consider all evidence which is relevant to that case. R.C. 2151.414(D).
In this case, the trial court found by clear and convincing evidence, that pursuant to R.C. 2151.414(B)(1) and (E)(1) Betty "cannot, and should not, be placed with either of her parents within a reasonable period of time." The court also found that pursuant to R.C. 2151.414(D), an award of permanent custody to LCCS is in the child's best interest. In support of these determinations, the trial court found that LCCS offered services which included psychological evaluations, parenting classes, and visitations with the child. Despite the offering of these services, the court also found that the parents failed to remedy the conditions which caused the initial removal of the child and that the child cannot be returned home.
The record shows that although appellant can act appropriately with the proper supervision and can even learn basic parenting skills by rote memory, she is unable to adapt these skills to new or unexpected events. The record also shows that appellant could quite unintentionally neglect the child's needs or safety. Although appellant may have met the minimum requirements for attendance in her highly supervised parenting classes, she has not demonstrated an ability to safely care for Betty without constant supervision. While we acknowledge appellant's love for and desire to take care of her child, the facts presented show that appellant is simply incapable of independently meeting the constantly changing needs of a growing child. Appellant has also failed to establish any inaccuracy in the evidence presented which would be relevant to the trial court's determination. Therefore, we conclude that the judgment of the trial court was not against the manifest weight of the evidence.
Accordingly, appellant's sole assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Melvin L. Resnick, J.
 James R. Sherck, J.
 Mark L. Pietrykowski, J.
CONCUR.